WENDELL J. WRIGHT, RELATOR, DEFENDANT IN ERROR. v. LUTHER A. CAMPBELL, RESPONDENT, PLAINTIFF IN ERROR.

Argued November 26, 1906—Decided March 4, 1907.

1. The act of February 15th, 1905, entitled "An act relative to the time of election and appointment and terms of office of officers elected or appointed in towns, townships, boroughs and other municipalities in this state," has no application to the terms of

county officers, except those who are elected by the various municipalities specified in the statute to represent them in the county government.

2. The act referred to neither abolished the annual meeting of the boards of chosen freeholders of the several counties of the state for the year 1905, nor changed the time for the holding of such meeting.

On error to the Supreme Court. For opinion of that court, see *ante p.* 82.

For the plaintiff in error, *Peter W. Stagg.*

*Pro se, Wendell J. Wright.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This controversy involves the right to the office of attorney of the board of freeholders of the county of Bergen. Wright, the relator in the court below, claims title by virtue of an election to the office by the board of freeholders at a meeting of that body held on the second Wednesday of May, 1905. Campbell claims title by virtue of an election held by the board on the 1st day of January, 1906.

The incumbent of the office prior to the election of Wright was Mr. Koester, who was elected on the second Wednesday of May, 1903. By force of section 87 of the act creating boards of freeholders, his term of office was two years, and, unless extended by subsequent legislation, expired upon the day upon which Wright was elected. It is contended, however, on behalf of Campbell, that Mr. Koester's term was extended until the first day of the following January, by force of the third section of the act of February 15th, 1905, entitled "An act relative to the time of election and appointment and terms of office of officers elected or appointed in towns, townships, boroughs and other municipalities in this state." *Pamph. L., p.* 14. The section referred to provides that "every officer heretofore appointed or chosen by the township committee, mayor or other governing body of any town, township, borough or other municipality, *and hold-*

*ing office therein at the passage of this act,* shall continue in
office, and his term of office shall be and hereby is extended
from the time when his term would otherwise expire until
twelve o'clock noon of the first day of January next succeed-
ing the date at which his term of office would otherwise ex-
pire." We do not consider that this statutory provision has
the scope contended for. Prior to the year 1901, municipal
or charter elections throughout the state were held on days
other than that on which the general or state election was
held. In 1901 the legislature, conceiving it to be desirable
that the municipal or charter election should be consolidated
with the general or state election in the various *cities* of the
state, passed a law providing that thereafter, in all the cities
of the state, all officers required to be elected therein at any
municipal or charter election should be voted for and elected
on the first Tuesday after the first Monday of November in
each year, and upon the same official ballots required by law
for the election of state and county officers. *Pamph. L.* 1901,
*p.* 41. This change of the date of the municipal or charter
election in cities, from the spring (ordinarily) until the fall,
made it necessary to alter the date upon which the terms of
office of the various officers elected or appointed for such mu-
nicipalities should commence, and the time was fixed by the
statute as "the first day of January next succeeding their
election." In order that the change in the date of the charter
election should not operate to suspend municipal functions in
the various cities of the state, the act provided (in section 2)
that the term of every officer theretofore elected in any city,
and holding office at the time of the passage of the act, should
be extended from the time when his term would otherwise
expire to the first day of January next ensuing, and further
provided (in section 3) for a like extension of the terms of
officers who were appointed by the mayor or by the common
council of the city. From 1901 to 1905 the charter or mu-
nicipal election in cities was held on the same day as the
general election for county and state officers, while in the
municipalities of lower rank the charter election continued to
be held in the spring. In the latter year the legislature

passed the statute to which Mr. Campbell appeals in support of his contention that Mr. Koester's term had not expired at the time of Mr. Wright's election. That statute is an exact transcript of the act of 1901, except that wherever the word "city," or its plural, appears in the earlier statute, the words "town, township, borough and other municipality," or their plurals, are substituted in the latter act. The legislative purpose sought to be accomplished by this latter enactment is too clear to be mistaken. It was to completely abolish "spring" elections throughout the state—to consolidate all municipal or charter elections with the general November election for state and county officers. The object of the second and third sections of the act of 1905 is identical with that which induced the insertion of the same section in the act of 1901, namely, to prevent the change in the date of the charter election in the various municipalities affected by the statute from disarranging or suspending the functions of those municipalities.

It is hardly necessary to add that, as a county is not one of the political divisions of the state which hold municipal or charter elections, the third section of the act of 1905 has no application to the terms of county officers, with the single exception of those who are elected by the various municipalities specified in the statute to represent them in the county government. As to that class, the section operates to extend the term of office of the then incumbents until the first day of the ensuing January, and to change the date of the commencement of the term of those thereafter elected from the second Wednesday of May to the first Monday of January.

It is further contended on behalf of Mr. Campbell that the election of Mr. Wright was a nullity because the meeting of the board of freeholders on the second Wednesday of May, 1905, at which he was chosen, was not the annual stated meeting of the board, and was held without legal authority. The sixth section of the act to incorporate chosen freeholders (*Gen. Stat., p.* 410) requires the annual stated meeting of the board to be held on the second Wednesday of each May, and the meeting at which Mr. Wright was elected was held

pursuant to that enactment.   The contention on behalf of Mr.
Campbell is that this section was repealed by the act of 1905
above referred to, and the date of the annual meeting changed
to the 1st day of January.   The statute appealed to contains
no reference to boards of freeholders or their meetings, but
the argument is that as the commencement of the terms of
members of the board of freeholders elected to represent the
various municipalities mentioned in the statute has been
changed by its provisions from the second Wednesday of May
to the 1st day of January, the time of organization is neces-
sarily changed to the latter date, and that as organization
must take place at the annual meeting, the statute, by neces-
sary implication, has substituted January 1st as the date of
the annual meeting.

It is to be observed that the act of 1905 did not change the
time of the commencement of the term of all members of
boards of freeholders, for the act of 1901, which consolidated
the municipal with the general election in the various cities
of the state, had already changed the time of the commence-
ment of the term of those members of boards of chosen free-
holders who were elected from that class of municipalities.
The act of 1901, although it created diversity in the com-
mencement of the terms of members of these boards, pre-
sented no obstacle to annual organization on the day previ-
ously designated by the legislature, namely, the second
Wednesday of May, and it is not at all clear to us that the
act of 1905 has any such effect.   But even if the soundness
of the contention made on behalf of Mr. Campbell be con-
ceded, the date of the annual meeting for the year 1905 mani-
festly was not changed to the 1st day of January, for the
1st day of January of that year had already gone by six
weeks before the passage of the act.   Clearly, if the statute
did change the date of the annual meetings of the boards of
freeholders, it did not become effective for that purpose until
after the first election provided for by it was held, for until
after that election no change whatever took place in the com-
mencement of the terms of any of the members, and it is this

change which, it is said, by necessary implication, alters the date of the annual meeting.

. It was suggested upon the argument that although the statute could not operate to change the date of the annual meeting of 1905 to the 1st day of January of that year, its effect was to abolish that meeting for that particular year. No reason was stated by counsel why such a result followed from the enactment of the statute of 1905, nor are we able to perceive any. The legislative scheme contains no purpose which required the abolition of that particular meeting, and this being so, the fact that by the fourth section of the act incorporating chosen freeholders (*Gen. Stat., p.* 410), and the twenty-fourth section of the General Tax law (*Pamph. L.* 1903, *p.* 409), the annual stated meeting of the board of freeholders is primarily designated as the one at which the financial budget of the county shall be made up for the ensuing year, and that no provision is made by the act of 1905 for the performance of that important work at any other time, is itself enough to negative the idea of any such legislative intent. We concur in the conclusion expressed by the Supreme Court in *Van Emburg* v. *Trall,* 44 *Vroom* 394, in which a similar contention was made that the act of 1905 did not operate to abolish the annual meetings of boards of freeholders for that year.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.

*For reversal*—None.